### IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MANUEL OYOLA, *an individual*, *and on behalf of all others similarly situated*.<br><br>c/o Lexero Law<br>80 M St SE Ste 100<br>Washington, DC 20003<br><br>v.<br><br>LAFAYETTE FEDERAL CREDIT UNION<br>2701 Tower Oaks Boulevard<br>Rockville Maryland 20852 | C-15-CV-25-004925<br><br>Case No: _____<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiff Manuel Oyola, an individual ("Oyola" or "Plaintiff"), on behalf of himself and others similarly situated, by and through undersigned counsel, sues Defendant, Lafayette Federal Credit Union ("Lafayette" or "Defendant") and states as follows:

1.      This class action seeks monetary and injunctive relief to redress injuries resulting from Defendant's negligence and wrongful acts related to a computer data breach that exposed the personal data of individuals who were customers and account holders of Lafayette.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action as the amount in controversy exceeds $25,000, exclusive of interest and costs, and the relief sought includes equitable, declaratory, and injunctive relief for which the Circuit Court has exclusive jurisdiction.

3.      This Court has personal jurisdiction over the present matter because Defendant contracted to provide services in Maryland, or regularly conducts business in Maryland.

1

4.      Maryland is also where a substantial portion of the events or omissions giving rise to this claim occurred and where a substantial portion of the property that is the subject of this action is situated.

5.      This Court has personal jurisdiction over the present matter because Defendant's principal place of business is located in Montgomery County with its main address as 2701 Tower Oaks Boulevard, Rockville Maryland 20852.

## FACTUAL BACKGROUND

### Defendant Lafayette

6.      Lafayette Federal Credit Union is a financial institution, operating ten full-service branch locations in the national capital region.

7.      Lafayette has more operating locations in Maryland than any other jurisdiction and within Maryland, the majority of these locations are in Montogomery County.   See https://www.lfcu.org/locations-atms/ last visited September 7, 2025.

8.      As of 2024, Lafayette had 57,462 members or account holders.

9.      Lafayette has been in operation for over 90 years and has received national recognition from publications such as S&P Global, Newsweek, and Bauer Financial.

10.      "Personal information" ("PI") is defined under Maryland's Personal Information Privacy Act §14–3501(e)(1).

11.      On information and belief, Defendant regularly collects and stores a wide variety of PI from its customers and prospective customers.

12.      On information and belief, PI collected by Lafayette regularly includes prospective account holder's name, address, phone number, email address, financial account information, social security number, and more.

13.     On information and belief, Lafayette collects and stores documents and other files that contain a consumer's personal and financial information, such as credit applications, driver's licenses, and more.

14.     As a financial institution that provides financial services, Defendant is part of the financial services sector within the financial industry.

15.     According to the Securities Industry and Financial Markets Association (SIFMA), Cybersecurity must be a top priority in the financial industry to ensure the security of customer assets and information and the efficient, reliable execution of transactions within markets. https://www.sifma.org/resources/cybersecurity-resources/ Last visited September 7, 2025.

16.     SIFMA provides resources to help financial services firms to address critical cyber threats and improve the financial industry's overall cybersecurity.  Id.

17.     According to SIFMA, the financial services sector must be committed to furthering the development of industry-wide cybersecurity initiatives that protect our clients and critical business infrastructure, improve data sharing between public and private entities and safeguard customer information.  Id.

18.     Lafayette claims they take all steps reasonably necessary to ensure their account holder's data is treated securely.  See https://www.lfcu.org/privacy-policy/ last visited September 7, 2025

**The Data Breach**

19.     Plaintiff was an account holder with Lafayette and entrusted Defendant with their PI.

20.     On information and belief, Lafayette did not place sufficient priority on cyber security or maintaining privacy of their clients' PI.

21.     At all times material hereto, Plaintiff's PI was stored on Lafayette's computer network and or its related cloud based network.

22.     Plaintiff received a letter from Lafayette dated March 20, 2025 containing information about a security breach of Defendant's computer network.

23.     The notice stated that Lafayette had "recently learned" that its employee email system had been accessed by an unauthorized person.

24.     The notice stated that, "upon discovering the incident," Lafayette "promptly secured their email network" and "began an internal investigation."

25.     The notice stated Lafayette engaged a forensic security firm to investigate the incident but did not state when that firm actually began work.

26.     The notice stated the forensic investigation determined the breach of Defendant's email occurred on September 16, 2024.

27.     The notice gave no explanation as to why more than six months had passed since the breach to the date of their notice to Plaintiff.

28.     The notice stated that based on its review, Lafayette determined on February 5, 2025 that Plaintiff's PI had been exposed in the breach, including his name, social security number, financial account number, and loan number.

29.     In sum, Defendant suffered from a breach in their computer network security that had affected the privacy and PI of Plaintiff and numerous other persons.

30.     As a result of the breach, the PI of Plaintiff was accessed and disclosed in an unauthorized manner.

31.     Lafayette did not reveal what actions were taken by the unauthorized actor during the time they had access to Lafayette's network.

32.    Lafayette did not reasonably explain the delay in notification to those affected.

33.    Lafayette's breach notification provided no information as to who was suspected of being the source of the breach or what specific failure there was in their security architecture, network, policy, or procedures.

34.    Lafayette's breach notification provided no specific details as to what technical measures were taken to secure their network.

35.    Lafayette's breach notification provided no details as to the additional security measures and training they have undertaken to prevent future such incidents.

36.    On information and belief, the integrity of Lafayette's entire computer network was compromised as a result of this breach incident.

37.    On information and belief, the confidentiality of all information on Lafayette's computer network was compromised based on this breach incident.

38.    On information and belief, all of Lafayette's current and former account holders had their PI and financial records exposed as a result of this breach.

39.    On information and belief, data present on Lafayette's network, including PI of current and former account holders, was copied, downloaded and exfiltrated by criminal actors during the time they had unauthorized access.

40.    On information and belief, the compromised PI of current and former account holders remains in the hands of criminal actors that breached Lafayette's network.

**Lafayette's Failures to Secure Data and Manage the Resulting Data Breach**

41.    On information and belief, the information accessed without authorization included the name, address, Social Security number, financial account information, date of birth, driver's license, state issued identification number, medical records, and email addresses of its

patients.

42.     The information listed in the above paragraph fits in the category of financial information and Personal Information ("PI").

43.     According to Defendant, notification was provided to 77,337 persons impacted by the breach.

44.     Defendant provided notification of the breach to several state authorities, including Maine (where 124 residents were impacted), Texas (where 9,108 residents were impacted), and California.

45.     However, as of June 2025, the Maryland Attorney General's Office had not received notification of the breach from Defendant.

46.     On information and belief, the vast majority of those impacted by the breach are Maryland residents.

47.     Breaches of PI are subject to the provisions of the Maryland Personal Information Privacy Act ("MD PIPA").

48.     Defendant did not comply with breach notification requirements of MD PIPA.

49.     On information and belief, Defendant had been well aware of the risk posed to its records such as what was exposed in this case.

50.     In the alternative, Defendant should reasonably have been well aware of the risk of cyber security breach such as what took place in this case.

51.     The necessary actions to mitigate the risk of the type of incident that occurred were known to Defendant and within their capacity to reasonably implement.

52.     On information and belief, Defendant had access to numerous resources to provide awareness of the cyber threats to their network and to prepare defenses against such attacks.

53.     On information and belief, Defendant failed to leverage countless available third-party resources to improve its cybersecurity posture.

54.     For example, SIFMA provides resources to help financial services firms to address critical cyber threats and improve the industry's overall cybersecurity. See https://www.sifma.org/resources/general/small-firms-cybersecurity-guidance-how-small-firms-can-better-protect-their-business/  and  https://www.sifma.org/resources/cybersecurity-resources/

55.     The FS-ISAC also provides resources to help companies such as Defendant ensure adequate cybersecurity.  See  https://www.fsisac.com/about-us

56.     On information and belief, Defendant failed to leverage countless resources available through organizations such as SIFMA and FS-ISAC, or other sources, to improve its cybersecurity posture.

57.     On information and belief, despite its understanding of the need for cybersecurity, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its computer systems.

58.     On information and belief, Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable computer security safeguards and protocols to protect PI in its possession.

**Plaintiff and Class Member's Losses and Damages**

59.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have sustained and will continue to sustain economic loss and other harms.

60.     Plaintiff and class members will sustain, or have sustained, direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in their personal and professional lives.

61.     Plaintiff and class members experienced and/or face an increased risk of emotional distress, mental pain and suffering due to exposure of highly sensitive private information.

62.     As a direct and proximate result of the unauthorized access and disclosure of his private information, Plaintiff became severely stressed and suffered anxiety, including physical manifestations.

63.     Plaintiff and class members will sustain, or have sustained, theft of their Personal Information.

64.     Plaintiff and class members will sustain, or have sustained, publication of their Personal Information to the Dark Web.

65.     Plaintiff and class members will sustain, or have sustained, damages to and diminution in value of their Personal Information.

66.     Plaintiff and class members will sustain, or have sustained, loss of the opportunity to control how their Personal Information is used.

67.     Plaintiff and class members will expend, or have expended, time spent on efforts to research how to prevent, detect, contest, and recover from misuse of their Personal Information;

68.     Plaintiff and class members will sustain, or have sustained, emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and other class members.

69.     Plaintiff and class members will sustain, or have sustained, continued risk of exposure to hackers and thieves of their information, which remain in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Class members' data.

70.     Plaintiff and class members will sustain, or have sustained, costs associated with attempting to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

71.     Plaintiff and class members will sustain, or have sustained, loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

72.     Plaintiff and class members will sustain, or have sustained, money and time to prevent, detect, contest, and repair identity theft, fraud, and other unauthorized uses of their Personal Information, including by identifying, disputing, and seeking reimbursement for fraudulent activity and canceling compromised financial accounts and associated payment cards, imposing withdrawal and purchase limits on compromised accounts and other accounts subject to potential compromise; and enrolling in credit monitoring and identity theft protection services.

73.     Plaintiff and class members will expend, or have expended, money and time to periodically order credit reports and place temporary freezes on credit.

74.     Plaintiff and class members will expend, or have expended, money and time to avail themselves of assets and/or credit frozen or flagged due to misuse.

75.     Plaintiff and class members will sustain, or have sustained, impairment of their credit scores, ability to borrow, and/or ability to obtain credit.

76.     Plaintiff and class members will sustain, or have sustained, anticipated future costs from the purchase of credit monitoring and identity theft protection services.

77.     Plaintiff and class members will sustain, or have sustained, costs associated with additional computer security needed due to increased personal vulnerability to cyber threats, including the enhanced risk of potential phishing attacks specifically crafted based on the extensive PI revealed, such as increased costs for anti-malware software and network security software and

monitoring services on all of Plaintiff's electronic devices, as well as increased time and effort to monitor for potential intrusions and respond to cyber security incidents on their personal devices and networks.

78.    Plaintiff and class members were or will be required to spend a substantial amount of time responding to and rectifying the losses incurred.

79.    Plaintiff alleges that any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended.

80.    The full impact of the violation of privacy through this breach can only be measured over the course of the lifetime of those affected.

## CLASS ALLEGATIONS

### Statement of Maintainable Class Claims

81.    Pursuant to Md. Rule 2-231, Plaintiff brings this class action on behalf of himself and on behalf of all others similarly situated pursuant to Md. Rule 2-231(b)(2) and (3).

### Definition of Class

82.    The "Class" that Plaintiff seeks to represent is defined as follows: All persons whose Personal Information was maintained by Lafayette and accessed or acquired without authorization during the cybersecurity incident described herein.

83.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parent entities, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus,

10

boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

84.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

## Allegations of Numerosity

85.     Pursuant to Md. Rule 2-231(a)(1), the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are over 70,000 individuals whose Personal Information may have been improperly accessed in the Data Breach.

86.     The Class is readily identifiable within Defendant's internal records.

## Identification of Common Questions of Law or Fact

87.     Pursuant to Md. Rule 2-231(a)(2), the questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

88.     A common question of law or fact is whether and to what extent Defendant had a duty to protect the privacy and Personal Information of Plaintiff and class members.

89.     A common question of law or fact is whether Defendant had a duty not to disclose the Personal Information of Plaintiff and class members to unauthorized third parties.

90.     A common question of law or fact is whether Defendant had duties not to use the Personal Information of Plaintiff and class members for non-business purposes.

91.     A common question of law or fact is whether Defendant failed to adequately safeguard the Personal Information of Plaintiff and class members.

92.     A common question of law or fact is whether and when Defendant actually learned of the Data Breach.

93.     A common question of law or fact is whether Defendant adequately, promptly, and accurately informed Plaintiff and class members that their PI had been compromised.

94.     A common question of law or fact is whether Defendant violated the law by failing to promptly notify Plaintiff and class members that their PI had been compromised,

95.     A common question of law or fact is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

96.     A common question of law or fact is whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur.

97.     A common question of law or fact is whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Plaintiff and class members.

98.     A common question of law or fact is whether Plaintiff and class members are entitled to actual, consequential, and/or nominal damages as a result of Defendant' wrongful conduct.

99.     A common question of law or fact is whether Plaintiff and class members are entitled to restitution as a result of Defendant' wrongful conduct.

100.     A common question of law or fact is whether Plaintiff and class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

**Allegations of Typicality**

101.     Pursuant to Md. Rule 2-231(a)(3), Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data

Breach due to Defendant's misfeasance.

## Adequacy of Representation

102.    Pursuant to Md. Rule 2-231(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the class members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the class and the infringement of the rights Plaintiff has suffered are typical of other class members.

103.    Plaintiff has retained counsel experienced in complex intellectual property litigation, information technology litigation, and class action litigation.

104.    Plaintiff has retained undersigned counsel, Arnold Abraham, with extensive cyber-security expertise, including as a federal government senior executive officer at the Department of Homeland Security and Department of Defense, U.S. Cyber Command.[1]

105.    Moreover, undersigned counsel, Eric Menhart, has litigated and tried complex technology cases in state and federal courts for nearly twenty years. Among other things, Menhart has been quoted or featured in numerous media outlets, including Forbes, Baltimore Sun, Washington Post, USA Today, CNN and Fox News on IT and IP legal issues. Menhart has also successfully litigated statutes such as the Stored Communications Act and the Computer Fraud and Abuse Act in federal trial and appellate courts.

106.    Counsels' curriculum vitae will be presented to the Court at an appropriate time.

## Predominance

107.    Pursuant to Md. Rule 2-231(b)(2), Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was

---

[1] *See https://www.thecyberlawteam.com/about*

13

maintained and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class

108.    The data breach affected class members uniformly and Plaintiff's claims alleged herein are based on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

### Superiority

109.    Pursuant to Md. Rule 2-231(b)(3), Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.

110.    Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

111.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged.

112.    If the matter was not pursued as a class action Defendant would gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources

of each individual class member with superior financial and legal resources.

113.    The costs of individual suits could unreasonably consume the amounts that would be recovered.

114.    Proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each class member to recover on the cause of action alleged.

115.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this instant litigation.

116.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, including its privacy policy, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

117.    Adequate notice can be given to class members directly using information maintained in Defendant's records.

118.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of class members, Defendant may continue to refuse to provide proper notification to class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

119.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

120.    Likewise, under Md. Rule 2-231(c)(4), numerous issues are appropriate for certification because such claims present only particular, common issues, the resolution of which

would advance the disposition of this matter and the parties' interests therein.

121.    One issue appropriate for certification is whether Defendant owed a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

122.    Another issue appropriate for certification is whether Defendant breached a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

123.    Another issue appropriate for certification is whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

124.    Another issue appropriate for certification is whether Defendant adequately, accurately and lawfully informed Plaintiff and class members that their Personal Information had been compromised.

125.    Another issue appropriate for certification is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

126.    Another issue appropriate for certification whether unauthorized parties obtained Class Members' Personal Information via the Data Breach.

127.    Another issue appropriate for certification is whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and class members.

128.    Another issue appropriate for certification is whether class members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I - Negligence

129.     Plaintiff realleges and incorporates by reference each and every allegation set forth above.

130.     Defendant had a duty to the Plaintiff to maintain data security measures consistent with statutory and industry standards.

131.     Defendant had a duty to the Plaintiff to design, maintain, or test security systems to ensure that Plaintiff's PI in their possession was adequately secured and protected.

132.     Defendant had a duty to the Plaintiff to implement processes that would detect a breach of its security system in a timely manner.

133.     On information and belief, Defendant breached each of these duties, as evidenced by the events described in this complaint.

134.     Defendant knew or should have known of the risks inherent in collecting, maintaining, and storing PI and financial records of Plaintiff and the heightened risk of doing so without adequate security systems and protocols.

135.     Defendant owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

136.     On information and belief, Defendant breached the above duty, as evidenced by the events described in this complaint.

137.     Defendant had a duty to prevent foreseeable harm to Plaintiff. This duty existed because Plaintiff and the class members were foreseeable and probable victims of inadequate

security practices.

138.    It was foreseeable that Plaintiff and the class members would be harmed by the failure to protect their PI because unauthorized actors routinely attempt to steal such information and use it for nefarious purposes.

139.    Defendant breached the duties it owed to Plaintiff and class members to keep their information secure.

140.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

141.    On information and belief, Defendant had numerous opportunities in advance of the breach to reasonably implement adequate cyber security measures as part of their duties to the Plaintiff, but failed to do so.

142.    On information and belief, Defendant failed to maintain data security measures consistent with statutory and industry standards.

143.    On information and belief, Defendant's failure to adequately implement one or more of the FS-ISAC's 15 fundamental cybersecurity recommendations essential to financial services firms' security and business operations, resulted in the breach.    See https://www.fsisac.com/cyber-fundamentals (last accessed February 23, 2025).

144.    On information and belief, Defendant failed to implement numerous measures recommended by the FBI as proactive preventative measures to maintain computer network security and avoid attacks, such as the one that resulted in the breach.

145.    Defendant failed to implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

146.    Defendant failed to enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

147.    Defendant failed to scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

148.    Defendant failed to configure firewalls to block access to known malicious IP addresses.

149.    Defendant failed to patch operating systems, software, and firmware on devices.

150.    Defendant failed to consider using a centralized patch management system

151.    Defendant failed to set anti-virus and anti-malware programs to conduct regular scans automatically.

152.    Defendant failed to manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

153.    Defendant failed to configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needed to read specific files, the user should not have written access to those files, directories, or shares.

154.    Defendant failed to disable macro scripts from office files transmitted via email. As one example, Defendant likely failed to consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

155.    Defendant failed to implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as

temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

156.    Defendant failed to consider disabling Remote Desktop protocol (RDP) if it is or was not being used.

157.    Defendant failed to use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

158.    Defendant failed to execute operating system environments or specific programs in a virtualized environment.

159.    Defendant failed to categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

160.    Defendant failed to conduct an annual penetration test and vulnerability assessment.

161.    On information and belief, Defendant failed to implement the measures recommended by the United States Cybersecurity & Infrastructure Security Agency to prevent and detect cyber-attacks, including the attack that resulted in the breach.

162.    On information and belief, Defendant failed to implement the measures recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect cyber-attacks, including the attack that resulted in the breach.

163.    As a direct and proximate result of Defendant's negligence and breach of duties, Plaintiff sustained and will continue to sustain economic loss and other harms.

164.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized

persons. Defendant had a duty to prevent foreseeable harm to others.

165.    This duty existed because Plaintiff and Class Members were foreseeable and probable victims of inadequate security practices.

166.    In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Personal Information, because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant also knew that it was more likely than not Plaintiff and other Class Members would be harmed, and in fact, suffered harm as identified above.

167.    Defendant breached the duties they owed to Plaintiff and Class Members to keep their information secure. But for Defendant' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, and without any wrongdoing on the part of Plaintiff or Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised.

168.    Plaintiff relies on the doctrines of actual and apparent agency, res ipsa loquitur, and respondeat superior where applicable.

169.    Defendant is further subject to negligence per se based on their violations of Maryland statutes.

170.    Defendant's negligence caused Plaintiff and Class Members to suffer harm as described above and actual damages in an amount to be determined at trial.

**Count II – Violation of Maryland Personal Information Privacy Act ("PIPA")**

**Md. Comm. Code §§ 14-3503 and 14-3504**

171.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

172.     Per Maryland §14–3501(e)(1), "Personal information" (PI) means: (i) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when the data elements are not encrypted, redacted, or otherwise protected by another method that renders the information unreadable or unusable: 1. A Social Security number, an Individual Taxpayer Identification Number, a passport number, or other identification number issued by the federal government; 2. A driver's license number or State identification card number; 3. An account number, a credit card number, or a debit card number, in combination with any required security code, access code, or password, that permits access to an individual's financial account; 4. Health information, including information about an individual's mental health; 5. A health insurance policy or certificate number or health insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self-insured, that permits access to an individual's health information.

173.     As described herein, Defendant failed to implement and maintain reasonable security procedures as required by Maryland law. See Md. Comm. Code. §14–3503(a).

174.     Defendant was legally required to "implement and maintain reasonable security procedures and practices" to "protect personal information from unauthorized access, use, modification, or disclosure."

175.     As described herein, the fact Defendant failed to prevent or even reasonably detect the data breach constituted a violation of their requirement to have reasonable security procedures under §14–3503.

176.     As evidenced by the results, whatever security practices and procedures Defendant had in place, they were not appropriate to the nature of PI maintained, nor the nature of Defendant's size, nor its operations.

177.    Further, Lafayette violated PIPA because it did not provide notice of the breach of its security in accordance with the requirements of §14–3504.

178.    The incident as described herein constitutes a breach of a security system under §14–3504.

179.    Maryland Law requires that "notification . . . shall be given as soon as reasonably practicable, but not later than 45 days after the business discovers or is notified of the breach of the security of a system." See Md. Comm. Code. §14–3504(b)(3).

180.    The notice provided by Defendant did not state clearly on what date Lafayette first became aware of the incident or actually began to take corrective action to secure their network.

181.    Instead, Defendant specifically avoided use of any actual dates and selected the vague terms "recently" and "promptly."

182.    On information and belief, Lafayette did not provide notice until more than 45 days after they first became aware of the incident.

183.    None of the communications following the breach, from Lafayette to Plaintiff or members of the class, were delivered timely. Defendant's failure to timely notify Plaintiff and members of the class constitutes a violation of the statute.

184.    On information and belief, Lafayette also failed to provide adequate or timely notice to the Maryland Attorney General of the incident, as required by §14–3504(h). This constitutes a violation of the statute.

185.    Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

**Count IV – Action for Violation of Maryland Consumer Protection Act ("CPA")**

**Md. Comm. Code §§ 13-301**

186.    Plaintiff realleges and incorporate by reference each and every allegation set forth above.

187.    Lafayette has engaged in unfair or deceptive trade practices, in violation of Maryland Code, Commercial Law Article §§ 13-301 and 13-303.

188.    Under Maryland Code, Commercial Law Article §14–3508, a violation of MD PIPA is an unfair or deceptive trade practice as defined in the Maryland Consumer Protection Act.

189.    Lafayette's violations of MD PIPA, as described above, therefore are unfair and deceptive trade practices and violations of § 13-301.

190.    Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

191.    Plaintiff should also be awarded attorneys' fees as authorized by Maryland Code, Commercial Law § 13-408(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

A.  An Order certifying the instant matter as a class action;

B.  Injunctive relief, precluding Defendant from further engaging in activity complained of herein;

C.  Declaratory relief, stating that Defendant is liable to Plaintiff, and any putative class, for the actions complained of herein;

D.  An award for damages, in an amount to be proven at trial, of any and all statutory damages, treble damages, punitive damages or any other damages that may be available to Plaintiff under any statute or cause of action; including, but not limited

to any statute set forth herein;

E.  An award of attorney's fees, pursuant to any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to, statutes cited herein;

F.  An award of reasonable costs and litigation expenses.

G.  An award of pre-judgment and post-judgment interest, to the extent allowable; and

H.  Such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, pursuant to Md. Rule 2-325, respectfully demands a trial by jury of all issues so triable.

* * *

Respectfully submitted,

*/s/ Arnold J. Abraham*
Arnold J. Abraham, Esq.
The CyberLaw Group
220 N. Liberty Street
Baltimore MD 21201
Phone: (443) 906-3495
*Abraham@TheCyberLawTeam.com*

*/s/ Eric Menhart*
Eric Menhart, Esq
Lexero Law
80 M St SE, Ste 100
Washington, DC 20003
Phone: 855-453-9376 Ext. 101
*Eric.Menhart@Lexero.com*

*Attorneys for Plaintiff and Proposed Class*